■ In the Matter of EDITH MERCHANT, Respondent, v. NEW YORK STATE DEPARTMENT OF MENTAL HYGIENE et al., Appellants.— Judgment reversed, determination confirmed and petition dismissed, all without costs. Memorandum: In January, 1971 petitioner, an employee at Rome State School, was assigned as an attendant in a ward of mentally retarded problem children ranging in age from 6 to 11 who were being treated under a program of behavior shaping. In this program good behavior by a child is to be reinforced and bad behavior ignored or, if this is not possible, the child is to be removed from any type of reinforcement. In the case of misbehavior, a child is not to be physically abused or even spoken to in a raised voice. On April 2, 1971 petitioner was suspended on charges of mistreatment of residents following a hearing. There was testimony that in three separate incidents on the night of March 31, 1971 petitioner struck one or another of the children within her care, respondent Director of the State School found that petitioner's guilt of the charges had been established, and imposed a punishment of dismissal. In this article 78 proceeding in which neither party asked for a transfer to the Appellate Division for a review of the substantiality of the evidence supporting the charges, Special Term limited itself to a consideration of the measure of the discipline imposed. Concluding that dismissal was an arbitrary and excessive penalty, it annulled the determination and remitted the matter to the Director for the imposition of a reprimand. On this appeal petitioner does not challenge the finding that she was guilty of the misconduct charged. Mindful that the power of the courts to disturb the measure of administrative punishment is

limited to those instances in which the penalty imposed is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Stolz* v. *Board of Regents*, 4 A D 2d 361, 364; *Matter of McDermott* v. *Murphy*, 15 A D 2d 479, affd. 12 N Y 2d 780), we think it was error to annul the determination by respondent Director. Petitioner's conduct, which was a violation of the treatment program being applied to the children in the ward where she was assigned, required appropriate action by the Director to "enforce strict compliance with his instructions" (Mental Hygiene Law, § 34, subd. 6). It demonstrated a lack of control, making her unsuited to supervision of these problem children, who are limited in their understanding of their own conduct and their ability to care for themselves. We deem entirely reasonable the dismissal of an employee who, as the appeal comes to us, we must assume has inflicted physical abuse on the youthful residents in her care. The determination appears to be in the best interests of the administration of the school (*Matter of Blackmon* v. *Feinstein*, 39 A D 2d 642; *Matter of Nicolay* v. *Port of New York Auth.*, 32 A D 2d 619). All concur, except Cardamone, J., who dissents and votes to modify the judgment to suspend petitioner, in the following Memorandum: I dissent because in my view, as in that of the trial court, petitioner's dismissal from State service after nearly 12 uninterrupted years without previous complaint, charge of incompetence or mistreatment on her record, is an arbitrary and excessive penalty so disproportionate to the incidents in question as to be shocking to one's sense of fairness (*Matter of Stolz* v. *Board of Regents*, 4 A D 2d 361, 364). The petitioner was charged with mistreating three mentally retarded children or "residents" of the Rome State School on the evening of March 31, 1971. Although the only issue before us on this appeal is the appropriateness of the punishment, such may not be determined without reference to the underlying facts. The record reveals that petitioner who was in charge of the "behavior shaping ward" on the evening in question hit one child in the head, slapped another in the back and kicked or nudged another with her foot during the dinner hour and thereafter while attempting to prepare 15 residents of the hospital for bed. None of these incidents caused injury to any of these children; nor were they done maliciously. While such incidents are not to be condoned and indeed are deserving of punishment, the record fully reflects that such reprimands, while not permitted by the rules, are in fact occasionally resorted to as a result of the stress felt by the attendants working on this ward. One of the rules for behavior shaping is to reinforce good behavior and ignore bad behavior. The Chief of the Children's Rehabilitation Service at the hospital testified that he did not believe anyone could "hold this right down the line" and that the rules must vary according to the reality of the situation. The State's principal witness against petitioner stated that "there are times when you're just at the end of your rope and its like automatic reflex for you to strike a child I guess." The record also indicated that petitioner was selected for work in this ward because of performance, technical skills and competence. Further, her superior testified that he visited the ward where petitioner worked at irregular hours on the average of two or three times per week and that he had never seen petitioner strike or abuse a resident. He also stated that she had always done her work competently and appeared to have patience with the residents. In my view, dismissal is too severe a punishment for a one-time act of misconduct absent any proof that it is willful or malicious and where the employee has a long unblemished record of service (*Matter of Mitthauer* v. *Patterson*, 8 N Y 2d 37, 41-42; *Matter of Rotkiewicz* v. *Department of Mental Hygiene*, 307 N. Y. 847). Suspension would be a more appropriate punishment. (Appeal from judgment of Oneida Special Term,

granting petition in article 78 proceeding.)   Present — Del Vecchio, J. P., Marsh, Witmer, Moule and Cardamone, JJ.